IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KIMBERLY PEERY, et al.,

    Plaintiffs,

v.

JOSHUA LOESLEIN, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:22-CV-4271-TWT

## OPINION AND ORDER

This is a case involving a motor vehicle accident. It is before the Court on Plaintiff Kimberly Peery's Motion for Partial Summary Judgment [Doc. 30], Defendant Mid-Century Insurance Company's Motion for Summary Judgment [Doc. 31], and Defendant Mid-Century Insurance's Motion to Strike Richard Peery's Declaration [Doc. 36]. For the following reasons, the Plaintiff Kimberly Peery's Motion for Partial Summary Judgment [Doc. 30] is DENIED, Defendant Mid-Century Insurance Company's Motion for Summary Judgment [Doc. 31] is GRANTED, and Defendant Mid-Century Insurance Company's Motion to Strike [Doc. 36] is DENIED.

## I.    Background[1]

This case involves a request for a judicial declaration that the Plaintiffs had $100,000 uninsured/underinsured motorist ("UM") coverage through their insurance policy. On May 1, 2021, the Plaintiff Kimberly Peery and the Defendant Joshua Loeslein were involved in an automobile accident in Cobb County, Georgia. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s mot. for Summ. J. ¶ 1). At that time, the Plaintiffs Kimberly and Richard Peery had an automobile insurance policy with the Defendant Mid-Century Insurance Company.[2] (*Id.* ¶ 2). The Defendant Loeslein carried minimal liability insurance. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Partial Summ. J. ¶ 3).

Richard Peery purchased the insurance policy through Farmers Insurance agent Gretchen Richardson in 2016. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s mot. for Summ. J. ¶ 7). Prior to obtaining the policy, Richard Peery contacted Richardson to inform her of changes he wanted to make to his new policy. (*Id.* ¶ 12). Among the changes he

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

[2] Mid-Century Insurance Company is a subsidiary of Farmers Insurance. Unless otherwise stated, the Court will use "Mid-Century" to refer to Mid-Century Insurance Company.

wanted to make was a reduction to his UM coverage. (*Id.* ¶ 13). Richardson advised against this request, and Richard Peery set up a meeting with her to discuss the issue. (*Id.* ¶¶ 14-15). During that meeting, Richard Peery inquired into why he needed a higher level of UM insurance since he had health insurance and disability insurance. (*Id.* ¶¶ 18-19). He now alleges that the responses Richardson gave to his questions were not comprehensive. (*Id.* ¶ 22). After this discussion, Richard Peery decided to reduce his coverage and electronically executed a "Selection/Rejection of Uninsured Motorist Coverage" form on July 25, 2016. (*Id.* ¶ 20; Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. B). The insurance declaration page subsequently stated that the UM coverage under the policy was $25,000 per person and $50,000 per accident. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Partial Summ. J. ¶ 4).

The Plaintiffs Kimberly and Richard Peery brought this lawsuit on September 7, 2022. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 23). The Plaintiffs brought claims against both Defendant Loeslein and Defendant Mid-Century for injuries Kimberly Peery suffered as a result of the car accident as well as loss of consortium that Richard Peery suffered. (*Id.* ¶¶ 23-24; Compl. ¶¶ 1-11). The Plaintiffs are seeking a judicial declaration that they have $100,000 in UM coverage. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 25). Finally, the Plaintiffs assert a breach of fiduciary duty claim against the

Defendant for failing to explain UM coverage to Richard Peery. (*Id.* ¶ 26). Plaintiffs now have moved for summary judgment regarding the judicial declaration. Mid-Century has moved for summary judgment on all counts and have moved to strike portions of Richard Peery's declaration.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.   Discussion

The Court starts by analyzing whether to strike certain paragraphs of Richard Peery's declaration. Then it considers each party's motion for summary judgment.

### A.  Defendant Mid-Century's Motion to Strike Richard Peery's Declaration

Mid-Century argues that Paragraphs 3 and 4 of Richard Peery's Declaration are directly contradicted by Richard Peery's deposition. (Def.'s Br. in Supp. of Def.'s Mot. to Strike, at 6). The Plaintiffs disagree and assert there is no contradiction between Richard Peery's declaration and his deposition. (Pl.'s Br. in Opp'n to Def.'s Mot. to Strike, at 1).

As the Eleventh Circuit has stated, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). When a party does so, "the court may disregard the affidavit as a sham." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). However, "[t]o allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986). Thus, there must be an "inherent inconsistency" between an affidavit and a deposition before an affidavit is disregarded; other discrepancies will be weighed by the trier of fact. *Rollins* 883 F.2d at 1530.

### 1.  Whether Paragraph 3 is contradicted by Richard Peery's deposition

Paragraph 3 of Richard Peery's declaration states, "Between June 21, 2016 and July 18, 2016, I had a meeting with Gretchen Richardson at Farmers' office." (Richard Peery Decl. ¶ 3). Mid-Century argues that this is directly contradicted by Richard Peery's deposition testimony that he "went into [Richardson's] office." (Def.'s Br. in Supp. of Def.'s Mot. to Strike, at 7; Richard Peery Dep. 22:8-17). The Court finds this is insufficient to strike the paragraph. Later in the same deposition Richard Peery stated, "I thought [Richardson] was a solely Farmers agent honestly. Her office said Farmers on the – you know, I – I thought she was just Farmers." (Richard Peery Dep. 31:14-17). Furthermore, Richard Peery received an email describing Richards as his "Farmers agent" and Richardson used a Farmers email address. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. A at 1-2). These facts show that these statements are far from being inherently inconsistent. The evidence on the record demonstrates that Richard Peery believed that Richardson's office and the Farmers office were one and the same. So, when he described the meeting as occurring in the "Farmers' office" in his declaration, he was not contradicting himself. Paragraph 3 will not be stricken.

### 2.  Whether Paragraph 4 is contradicted by Richard Peery's deposition

Mid-Century contends that Paragraph 4 of Richard Peery's declaration is inconsistent with his deposition because he "testified in his deposition to his

6

full memory of his interactions with Ms. Richardson." (Def.'s Br. in Supp. of Def.'s Mot. to Strike, at 7). Mid-Century also points to the fact that an email sent from Richardson directly contradicts Richard Peery's statement that Richardson never explained that UM would cover non-economic injuries. (*Id.* at 8).

The Court will not strike this paragraph either. The only sentence that Mid-Century takes specific issue with is Richard Peery's statement that Richardson did not "ever explain[] UM would cover non-economic injuries, such as pain and suffering." (*Id.*). In his deposition, Richard Peery said that after Richardson explained that medical expenses and lost work would be covered by the UM insurance, "she sa[id] I don't know of any other benefit." (Richard Peery Dep. 22:18-23:16). Nor does the email that Mid-Century provided prove any inconsistency. The email makes no mention of coverage for non-economic losses, even though it mentions medical coverage. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. A). Even if the email is read to be explaining that UM covers non-economic injuries, that is not a reason to conclude the declaration is a sham. A motion to strike will not be granted simply because the moving party has evidence contrary to what the declaration states. Richard Peery's declaration will not be stricken.

### B. Cross-Motions for Summary Judgment on the Amount of UM Coverage

The Plaintiff Kimberly Peery has moved for partial summary judgment seeking a judicial declaration that the policy had $100,000 in UM coverage.

7

(Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 3). First, she asserts that the UM selection form did not comply with Georgia's insurance regulations. (*Id.*). Second, she claims that Georgia law requires all named insureds to choose a UM coverage that is less than the limits of liability coverage. (*Id.* at 13-14). Since Richard Peery executed the UM selection form and Kimberly Peery did not execute or have notice of the form, Kimberly Peery argues, Georgia law prohibits the reduction of UM coverage as applied to her. (*Id.*). Third, she contends that Richard Peery's signature on the form is not valid because Richardson did not fully explain UM coverage to him, and Richard Peery was therefore not fully informed when he signed the form. (*Id.* at 21). Under each of these theories, Kimberly Peery argues that the Court should insert the Georgia statutory default term (i.e., UM coverage equivalent to liability coverage) into the insurance contract instead of voiding the contract. (*Id.* at 8). If the Court did so, Kimberly Peery's UM coverage would be $100,000. (*Id.*).

For its part, Mid-Century argues that the Court should deny Plaintiffs' claim for a judicial declaration of $100,000 in UM coverage. (Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 7-24) First, with respect to the alleged failure to comply with insurance regulations, the Defendant argues that the Georgia Insurance Commissioner has exclusive authority to prosecute any alleged insurance regulation violation. (*Id.* at 7). Second, it maintains that Richard Peery can and did sign a UM selection form that is binding on

Kimberly Peery. (*Id.* at 10). Third, it asserts that Richard Peery's signature is valid because any statements made by Richardson were mere opinion and because there is a duty to read the insurance policy. (*Id.* at 19, 22).

### 1. Whether the Defendant violated insurance regulations and whether the Plaintiff Kimberly Peery has a private right of action

The Georgia Administrative Code requires a notice with specified language to be given to the insured under any policy that includes UM coverage. Ga. Comp. R. & Regs. 120-2-28-.06. The Plaintiff Kimberly Peery has provided the UM Selection Form which does not include the specified language. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. B). Mid-Century denies that it violated the applicable regulation, but it does not provide any evidence or argument that it sent either of the Plaintiffs the required notice. (Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 7, 9). Instead, Mid-Century argues that Plaintiff Kimberly Peery has no private right of action because the Insurance Commissioner has exclusive authority to enforce the regulation. (*Id.* at 7-9). The Court agrees.

Chapter 34A of the Insurance Code authorizes the Insurance Commissioner to bring an action and seek an injunction as well as restitution for persons aggrieved by a violation of the Commissioner's rules. O.C.G.A. § 33-34A-11(f). The Commissioner is also authorized to order a person who has been found to have violated the Commissioner's rules to pay a civil penalty. O.C.G.A. § 33-34A-11(g). Neither that statute nor the regulation state that

private individuals can bring a suit to remedy a violation. *See* O.C.G.A. § 33-34A-11; Ga. Comp. R. & Regs. 120-2-28-.06. Furthermore, there is persuasive authority that other regulations promulgated by the Insurance Commissioner lack a private right of action for enforcement. *Garrett v. Autonation Fin. Servs. Corp.*, 2008 WL 11335007, at *3 (N.D. Ga. May 23, 2008); *Jones v. New England Life Ins. Co.*, 974 F. Supp. 1476, 1482 (M.D. Ga. 1996).

The Plaintiff Kimberly Peery fails to point to any provision that provides her with a right to reformation of the insurance policy on the basis of this alleged regulatory violation. She instead identifies two cases that cite to regulations promulgated by the Commissioner of Insurance and states that "this court can certainly take notice of the Georgia Rules and Regulations of the Insurance Commissioners." (Reply Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 3-4). However, neither case supports her position that a Court may grant declaratory judgment to a private individual because of an alleged regulatory violation. In fact, neither case involved a regulatory violation. *Standard Guaranty Ins. Co. v. Davis,* 145 Ga. App. 147 (1978), was about whether exclusionary language conflicted with the Georgia Motor Vehicle Accident Reparations Act. The court cited to the language of the regulatory rule as persuasive authority for the proposition that liability insurance and no-fault insurance were two separate coverages in Georgia. *Id.* at 149. In *United Servs. Auto Ass'n v. Ansley*, 254 Ga. 647 (1985), the court noted that a

10

regulation required the insurer to send notice informing the insured that a failure to respond to the notice would constitute acceptance of the maximum coverage. It was not contested that the insurer complied with the notice regulation in that case, so the question before the court was about the effect of a written rejection by an insured under the circumstances. *Id.* Accordingly, the Plaintiff Kimberly Peery has not cited either a statute or a case that states there is a private right of action for the failure to provide the proscribed notice along with her UM policy. Without a cause of action, the Court cannot grant declaratory relief for this alleged violation.

The Court also notes that the required notice does not reference non-economic damages with any more specificity than the policy does. Ga. Comp. R. & Regs. 120-2-28-.06(2); *see* discussion *infra* Section III.C. Therefore, it is unclear how the alleged failure to send that notice would have caused any injury suffered by the Plaintiffs, even if there was a private right of action. For these reasons, the Court will not grant Plaintiff's Motion for Partial Summary Judgement on this ground.

### 2. Whether Georgia law requires all named insureds to execute a reduction in UM coverage

Georgia law sets the default coverage for UM insurance as being equal to the amount of liability insurance coverage provided by the policy. O.C.G.A. § 33-7-11(a)(1)(B). However, that coverage can be reduced so long as it is not less than $25,000 for bodily injury to one person and $50,000 for bodily injury

to multiple people. O.C.G.A. § 33-7-11(a)(1)(A). At issue here is what Georgia law requires for UM coverage to be set below the default if there are multiple named insureds on the policy. The Plaintiff Kimberly Peery argues that a reduction in coverage is not effective against any named insured who did not sign the UM selection form. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 12). Since she did not sign the UM selection form here, she maintains that she is entitled to the default UM limit equal to her liability insurance coverage, which would be $100,000. (*Id.*). Mid-Century argues that any one of the insureds can reduce coverage for all of the insureds. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 7-8). Because the Plaintiff Richard Peery signed a selection form for $25,000 reduced-by UM coverage, Mid-Century contends that the Plaintiff Kimberly Peery is bound by that reduced coverage decision. (*Id.* at 7).

The first point of dispute between the parties is which provision of the Insurance Code applies to this case. The Plaintiff Kimberly Peery asserts that O.C.G.A § 33-7-11(a)(1)(B) applies, which states in part: "In any event, the insured may affirmatively choose uninsured motorist limits in an amount less than the limits of liability." (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 10). Meanwhile, the Defendant believes O.C.G.A. § 33-7-11(b)(1)(D)(ii)(II) is the applicable provision. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 7). That provision permits "an insured" to reject so-called "added-on" or "excess" UM insurance and opt for what is known as "traditional" or

12

"reduced-by" UM insurance instead. O.C.G.A. § 33-7-11(b)(1)(D)(ii)(II); *Allstate Fire and Cas. Ins. Co. v. Rothman*, 332 Ga. App. 670, 672 (2015). The limits of liability in an added-on policy will cover any damages an insured suffers which exceeds the at-fault party's policy limits. *Rothman*, 332 Ga. App. at 672. On the other hand, under a reduced-by policy, the UM liability limits are reduced by any amount that the insured received from the at-fault party's insurer. *Id.*

The question then becomes whether to interpret the words "the insured" to require "*all of the named* insureds" to affirmatively choose a lower UM limit. That is the Plaintiff's position. Or, should "the insured" be interpreted as "an insured?" That is the Defendant's position. In interpreting the words of a statute, "the courts shall look diligently for the intention of the General Assembly." O.C.G.A. § 1-3-1(a). In doing so, "the ordinary signification shall be applied to all words" except for terms of art. O.C.G.A. § 1-3-1(b). If the language of a statute is plain "and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent." *Hollowell v. Jove*, 247 Ga. 678, 681 (1981) (citations omitted). When interpreting this statute specifically, Georgia courts have noted that "O.C.G.A. § 33-7-11 is remedial in nature and must be broadly construed to accomplish the legislative purpose." *McGraw v. IDS Property & Cas. Ins. Co.*, 323 Ga. App. 408, 411 (2013) (quotation marks and citation omitted). "The underling purpose of uninsured motorist legislation" is "the protection of innocent victims from the negligence of irresponsible drivers." *Terry v. State Farm Fire & Cas.*

13

*Ins. Co.*, 269 Ga. 777, 778 (1998) (citation omitted).

The statute's definition of "insured" includes in part "the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise[.]" O.C.G.A. § 33-7-11(b)(1)(B). When determining who is the "named insured," the Court of Appeals of Georgia has looked to the definition in the policy. *See Soufi v. Haygood*, 282 Ga. App. 593, 597-98 (2006). Here, the policy states "[n]amed insured means the person or persons listed on the Declarations Page as the named insured." (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. F at 4). The Declarations Page lists both Richard Peery and Kimberly Peery. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. E). Thus, Kimberly Peery is one of "the insured." But, can she claim the benefit of higher UM coverage than her husband—also "the insured"—elected?

Although there are no Georgia appellate court cases precisely on point, there are two that are close and are relied upon by Mid-Century. In *Soufi*, the husband signed a form reducing UM coverage to $100,000. The wife was also a named insured. She was injured in an automobile accident with an underinsured driver. She sought $300,000 in UM coverage based upon the liability coverage of the policy. The Court of Appeals of Georgia reviewed the legislative history of O.C.G.A. 33-7-11(a)(1) and stated that "the 2001 amendment was intended to make a policy's liability limits the default provision for UM coverage, unless *an* insured affirmatively elects UM coverage

14

in a lesser amount." *Soufi*, 282 Ga. App. at 595 (emphasis added). It then went on to hold that the husband was authorized to elect the amount of UM coverage and the insurance company was not required to obtain a separate election from the wife. *See id.* at 597-98. Similarly, in *Cline v. Allstate Property and Casualty Insurance*, 354 Ga. App. 415 (2020), the wife obtained the insurance policy, and the husband was insured as an additional driver. He was injured and sought higher UM coverage than the policy provided. The Court of Appeals of Georgia again stated that the effect of the 2001 amendment to the statute was intended to allow "an insured" to elect less UM coverage than liability coverage. *Cline*, 354 Ga. App. at 416-17. On that basis, the court held that the husband was bound by his wife's election of lower UM coverage. *Id.* at 417.

In arguing that the words "the insured" should require "*all of the named insureds*" to choose a lower limit, the Plaintiffs rely on *Ruby v. Hise*, a Georgia trial court case. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. 3). In *Ruby v. Hise*, Ruby's UM insurer tendered Ruby $25,000 in UM coverage based on a UM insurance selection form signed by Ruby's wife. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. 3 at 1). Ruby argued that he should get $100,000 (which matched his liability insurance) because he never affirmatively selected the lower UM coverage amount and because there was no evidence that his wife was acting as his agent when she signed it. (*Id.* at 1-2). The court agreed. It held that the insurance company could not rely on an inference that Ruby's wife was acting as his agent when she signed the form.

15

(*Id.* at 4). It looked to the fact that other states' courts ruled that similarly worded statutes required all named insureds to sign the UM selection form in order to effectuate a reduction in coverage. (*Id.* at 5-6). Then it compared the language of subsection (a)(3) that permits "any insured" to reject UM coverage in its entirety with the language of (a)(1) that requires "the insured" to reduce the coverage amount. (*Id.* at 7). The difference in language, it held, expressed a difference in meaning because the legislature could have used "any insured" for both provisions but chose not to. (*Id.*). Thus, the court decided that the insurer must show that all named insureds affirmatively chose a lesser UM coverage amount. (*Id.*).

The Defendant points to case law from Louisiana, North Carolina, Virginia, and Washington indicating that any named insured can select a lesser amount of UM coverage for all other insureds on the policy. (Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 16-18). The cases from Louisiana, North Carolina, and Virginia involve statutes that use the language "any insured," "a named insured," or "any one named insured." *Huguet v. State Farm Mut. Auto. Ins. Co.*, 619 So. 2d 186, 188 (1993); *Farrior v. State Farm Mut. Auto Ins. Co.*, 164 N.C. App. 384, 387 (2004); *Atkinson v. Penske Logistics, LLC*, 268 Va. 129, 134 (2004). The statute in the Washington case initially had the language "the named insured," however, the legislature amended the statute to read "a named insured" a year before the automobile accident that gave rise to the injuries in that case. *Hall v. Allstate Ins. Co.*, 53

16

Wash. App. 865, 866 (1989).

On the other hand, as the court in *Ruby v. Hise* pointed out, other jurisdictions with statutory language similar to O.C.G.A. § 33-7-11(a)(1)(B) have found that all named insureds must approve of a change in the policy. In Alabama, the relevant statute (Section 32-7-23) provided that "the named insured shall have the right to reject" UM coverage. *Nationwide Ins. Co. v. Nicholas*, 868 So.2d 457, 459 (2003). When interpreting that statute, the court found as follows: "In the present case, where Lynette Nicholas, as a 'named insured,' did not reject the uninsured-motorist coverage existing under the family policy, such coverage continued in force as to her, notwithstanding the later rejection of that coverage by Kurk Nicholas, Sr. Section 32-7-23 does not authorize one named insured to reject uninsured-motorist coverage on behalf of another named insured." *Id.*

Similarly, in Oklahoma, the relevant statute states that "[t]he named insured shall have the right to reject such uninsured motorist coverage in writing." *Plaster v. State Farm Mut. Auto. Ins. Co., Inc.*, 791 P.2d 813, 814 (1989). The Supreme Court of Oklahoma found that "where an automobile insurance policy lists more than one individual as a 'named insured,' a written rejection of uninsured motorist coverage by less than all named insureds is not a complete rejection of that coverage within the four corners of the policy." *Id.*

Mid-Century argues that "it would be inconsistent to find plaintiff is covered under the terms of a policy which benefit her but is not bound by the

terms which do not benefit her." *Messerly v. State Farm Mut. Auto. Ins. Co.*, 277 Ill. App.3d 1065, 1070 (1996). In that case, the statue was simply silent as to whom the offer of UM coverage had to be made. The court concluded that "[r]equiring offers of UM/UDIM coverage to be made to all insureds under automobile policies would be contrary to reasonable business practices from which both insurers and consumers benefit." *Id.* This Court agrees.

Richard Peery is the only person who signed the UM selection form. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. B). The UM selection form states "I understand and agree that my selection or rejection of Uninsured Motorist Coverage, as shown above, shall be binding on all persons insured under the policy." (*Id.*). The Peerys accepted the policy with a declarations page showing that they had $25,000 in UM coverage. Thereafter, the Peerys paid lower premiums for five years based upon Mr. Peery's election. (*See* Richard Peery Decl. ¶¶ 5, 7). Accepting the Plaintiff's argument would mean that two individuals in the same household had different amounts of UM coverage under the same policy throughout this period. The declarations page that accompanied the Renewal Notice for the policy period of January 28, 2021 to July 28, 2021 clearly showed reduced-by UM coverage of $25,000 per person.

Throughout O.C.G.A. § 33-7-11, the statute allows "an insured" or "any insured" to elect deductibles, reject UM coverage in its entirety, and elect whether to choose excess or reduced-by UM coverage. There is no logical reason to allow an insured to make all of these elections, but to require all named

insureds to make the election under O.C.G.A. 33-7-11(a)(1)(B). The Court of Appeals of Georgia in *Soufi* and *Cline* treated "the insured" in O.C.G.A. § 33-7-11(a)(1)(B) and "an insured" as equivalent and interchangeable terms. The Court here will do the same. Mid-Century is entitled to summary judgment as to the Plaintiffs' claim for more than $25,000 in UM coverage.

## C. Mid-Century's Motion for Summary Judgment on the Breach of Fiduciary Duty Count

Mid-Century argues that it is entitled to judgment as a matter of law on the breach of fiduciary duty claim because (1) there was no fiduciary relationship between it and the Plaintiffs and (2) even if there were a fiduciary relationship, there was no breach of duty because Richardson recommended getting UM coverage equal to the Plaintiffs' liability limits. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 11-12, 15).

The Court starts by analyzing whether there was a fiduciary relationship between Mid-Century and the Plaintiffs. Under Georgia law, "[i]t is well settled that there is no fiduciary relationship between the insured and the insurer or the insurer's agent." *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga. App. 416, 422 (2004) (quotation marks and citation omitted). Accordingly, "[o]ral statements by an agent of an insurance company generally cannot bind the insurance company." *Fowler v. Prudential Prop. & Cas. Ins. Co.*, 214 Ga. App. 766, 767 (1994) (quotation marks and citation omitted). However, this general rule will subside if there is a confidential relationship between the

parties. *See Walsh v. Campbell*, 130 Ga. App. 194, 198-99 (1973). A relationship will be deemed confidential if "one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith." O.C.G.A. § 23-2-58.

The Plaintiff Kimberly Peery argues that the general rule that a fiduciary relationship does not exist is inapplicable here because (1) the parties here did not have sufficiently antagonistic interests, and (2) the policy does not explicitly state that uninsured motorist benefits cover non-economic damages and Richard Peery therefore had to rely on the expertise of Richardson. (Pl.'s Br. in Opp'n to Def.'s Mot for Summ. J., at 6-7) On the first point, Kimberly Peery contends that cases holding that there is no fiduciary relationship involved cases where the insurer and the insured had divergent monetary interests, which she implies is not present here. (*Id.* at 6). It is unclear, however, that the interests in this case are any less divergent. For example, in *Fowler*., the court found that there was no fiduciary relationship between the insured and their insurance agent after the agent told the insured that they had a grace period to pay their premiums when the insurance policy stated otherwise. *Fowler*, 214 Ga. App. at 766-67. Kimberly Peery does not explain how this case—where the Plaintiff Richard Peery reduced the UM coverage expressly to save money on premiums—involves less antagonistic interests than the interests in *Fowler*.

20

Second, Kimberly Peery maintains there was a confidential relationship because Richard Peery had to rely on Richardson's expertise. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 6-7). She asserts that this case is different than other cases that found there was no fiduciary relationship because, in those cases, reading the policy would have made it "readily apparent" that what the agent said was not true. (*Id.* at 6). By contrast, Kimberly Peery argues, the policy here does not explicitly state that non-economic damages are covered, and Richard Peery consequently had to rely on Richardson's assertions about the policy. (*Id.* at 6-7).

This evidence is inadequate as a matter of law. For starters, the insurance policy states that the UM coverage "will pay damages an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured person, caused by an accident" by an uninsured vehicle. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Ex. F at 7-8). The policy defines "bodily injury" as "accidentally sustained bodily harm to an individual including any resulting illness, disease or death." (*Id.* at 3). It further defines "damages" as "compensation in the form of compensatory damages that can be recovered by those who suffer bodily injury or property damage as a result of an accident but does not include punitive or exemplary damages." (*Id.*). As the Plaintiff Kimberly Peery correctly points out, a plaintiff is legally entitled to recover compensatory damages for physical and mental pain stemming from a physical

21

injury. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 6). Accordingly, the policy terms did clearly include non-economic damages even if it did not use the words "pain and suffering" or "non-economic damages."

Furthermore, even if there was reliance, that is not enough. The Plaintiff Kimberly Peery must also show that Richardson "h[eld] h[er]self out as an expert in the field of insurance and perform[ed] expert services on behalf of the insured." *Atlanta Women's Club, Inc. v. Washburne*, 207 Ga. App. 3, 4 (1992) (quotation marks and citation omitted). Only when that is shown does the duty to "minutely examine the policy" become reduced to a duty to be aware of what would be "readily apparent" from an examination of the coverage. *Id.* at 4-5. Kimberly Peery has put on no evidence that Richardson held herself out as an expert or provided expert services. Thus, the Court finds that no fiduciary relationship existed. As such, there is no need to examine whether Mid-Century breached a fiduciary duty. Summary judgment is granted for Mid-Century on the breach of fiduciary duty claim.

## IV.   Conclusion

For the foregoing reasons, Plaintiff Kimberly Peery's Motion for Partial Summary Judgment [Doc. 30] is DENIED, Defendant Mid-Century's Motion for Summary Judgment [Doc. 31] is GRANTED, and Defendant Mid-Century's Motion to Strike [Doc. 36] is DENIED.

SO ORDERED, this   26th   day of September, 2023.

22

THOMAS W. THRASH, JR.
United States District Judge